# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAUWAI FARHA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>B. SILVA, et al.,<br><br>　　　　　Defendants.<br>_____/ | CASE NO. 1:06-cv-00755-OWW-SKO PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE PARTIALLY GRANTED AND PARTIALLY DENIED<br><br>OBJECTIONS DUE WITHIN 21 DAYS |

Plaintiff Mauwai Farha ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On September 16, 2010, Defendants filed a motion for summary judgment. (Doc. #79.) Plaintiff filed an opposition on February 3, 2011. (Doc. #83.) Defendants filed a reply on February 10, 2011. (Doc. #86.)

For the reasons set forth below, the Court will recommend that Defendants' motion for summary judgment be partially granted and partially denied.

**I.　Background**

　　**A.　Plaintiff's Claims**

This action proceeds on Plaintiff's first amended complaint filed on April 23, 2009. (Doc. #35.) Plaintiff's complaint concerned an incident that occurred on May 5, 2004, at the California State Prison in Corcoran, California ("CSP-Corcoran"). Plaintiff alleged that he was removed from his cell in the administrative segregation ("Ad-Seg") section of CSP-Corcoran by Defendants Swain, Banks, and Pierce. Plaintiff was told that Defendant Silva and lieutenant M.M. Miller wanted to speak with him. Plaintiff was placed in a holding cell and ordered to strip down. While Plaintiff

1

1  was undressed, Swain and Banks laughed at Plaintiff, refused to return Plaintiff's clothes, and
2  walked away.  Pierce walked by the holding cage and said, "Ha ha you look like those Iraqis in that
3  prison!"  A correctional officer gave Plaintiff some boxers fifteen minutes later.  Later, Plaintiff was
4  handcuffed and placed back in his cell.  When Plaintiff asked the escorting officers to remove his
5  handcuffs, the correctional officers said "fuck you" and left.

6        Plaintiff alleges he was left in his cell with his boxers and his lunch.  Plaintiff also alleges
7  that he was in pain.  Plaintiff stuffed his lunch in the toilet and flooded his cell to get the attention
8  of prison officials.  Silva came to Plaintiff's cell to investigate and Plaintiff complained about the
9  handcuffs.  When Plaintiff requested medical treatment for his swollen hands, Silva told Plaintiff
10 that he would look for medical staff.

11       Twenty minutes later, Silva, Swain, Banks, and Pierce returned and removed Plaintiff from
12 his cell.  Plaintiff's cell was searched.  When Plaintiff returned to his cell, he noticed his asthma and
13 blood pressure medications were missing, as were his suicide blanket, mattress, T-shirts, and socks.
14 When Plaintiff complained to Silva about his missing medications, Silva told him to "deal with it."
15 Plaintiff requested to be seen by medical staff but was ignored.

16       Later that evening, Plaintiff told Defendants Wimbly and Williams that he was suicidal.
17 Wimbly and Williams ignored Plaintiff.  Plaintiff allegedly became stressed and suffered an asthma
18 attack.  Plaintiff covered his cell window with toilet paper to get the attention of staff.  Twenty
19 minutes later, Defendant John Doe appeared and told Plaintiff to cuff up to get help.  Plaintiff was
20 escorted outside and slammed into a concrete wall by Defendants Wimbly, Williams, and Riddle.
21 John Doe hit Plaintiff on the side of his face and kicked him in the rear.  John Doe also chocked
22 Plaintiff while repeating, "can you breath[e] now mother fucker."  After the beating, Plaintiff was
23 returned to his cell.

24       The Court screened Plaintiff's complaint on May 6, 2009. (Doc. #39.)  The Court determined
25 that Plaintiff's complaint stated cognizable claims under Section 1983 against Defendants Swain,
26 Banks, and Pierce for stripping Plaintiff naked and ridiculing him in violation of the Eighth
27 Amendment.  The Court determined that Plaintiff stated cognizable claims against Defendants
28 Wimbly, Williams, Riddle, and John Doe for attacking Plaintiff while he was suffering from an

asthma attack in violation of the Eighth Amendment. The Court determined that Plaintiff stated cognizable claims against Defendants Silva, Swain, Banks, Pierce, Wimbly, Williams, Riddle, and John Doe for exhibiting deliberate indifference toward Plaintiff's serious medical needs in violation of the Eighth Amendment. Finally, the Court determined that Plaintiff stated cognizable claims against Defendants Silva Swain, Banks, Pierce, Wimbly, Williams, Riddle, and John Doe for discriminating against Plaintiff on the basis of his race in violation of the Equal Protection Clause of the Fourteenth Amendment.

### B. Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment on several grounds. First, Defendants argue that Piece and Riddle are entitled to summary judgment because they did not participate in the alleged misconduct as they were not assigned to work in Ad-Seg. Second, Defendants argue that the alleged verbal harassment of Plaintiff does not rise to the level of an Eighth Amendment violation. Third, Defendants argue that Plaintiff did not have any serious medical needs and was not substantially harmed by Defendants' actions. Fourth, Defendants argue that the alleged use of force was merely de minimis and does not implicate the Eighth Amendment. Finally, Defendants argue that they are entitled to qualified immunity.

## II. Summary Judgment Legal Standards

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. "A moving party without the ultimate burden of persuasion at trial-usually, but not always, a defendant-has both the initial burden of

production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Federal Rule of Civil Procedure 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. at 248 (1986) ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Federal Rule of Civil Procedure 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must

4

be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## III. Discussion

### A. Claims Against Defendants Pierce and Riddle

Defendants argue that Piece and Riddle did not participate in any alleged misconduct because they did not work in the Ad-Seg unit. Defendants have submitted declarations from Pierce and Riddle stating that they did not work in Ad-Seg and did not mock Plaintiff during a strip search, leave him handcuffed in his cell, or confiscate his medications.

Plaintiff alleges that Pierce removed Plaintiff from his cell under the pretense that Plaintiff was being escorted to see a sergeant. Instead, Plaintiff was placed in a holding cage and ordered to strip naked. Plaintiff alleges that Pierce later walked by Plaintiff's holding cage, laughed, and told Plaintiff that he "look[ed] like those Iraqies[sic] in that prison!!!" (Motion: In Opp'n to Defendants[sic] Mot. for Summ. J. . . . Along with Exhibit's[sic] . . . 3, ECF No. 83.)

Plaintiff alleges that Riddle slammed him into a concrete wall and attacked him after he suffered an asthma attack and was removed from his cell.

Although Plaintiff has failed to present his evidence in the form of an affidavit, Plaintiff's verified complaint and opposition can be regarded as an affidavit for the purpose of ruling on Defendants' motion to dismiss. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) ("because [the plaintiff] is pro se, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the plaintiff] attested

5

under penalty of perjury that the contents of the motions or pleadings are true and correct.").

Defendants have submitted evidence that neither Pierce nor Riddle participated in the violation of Plaintiff's constitutional rights. However, Plaintiff has submitted sufficient evidence to dispute Defendants' evidence and establish a genuine issue of material fact regarding whether Pierce and Riddle participated in the violation of Plaintiff's constitutional rights. Plaintiff personally observed the incidents in question and it can be inferred that Plaintiff has personal knowledge of the relevant facts and can testify at trial that Pierce and Riddle participated in the alleged constitutional violations. Accordingly, the Court will recommend that Defendants' motion for summary judgment be denied with respect to Plaintiff's claims against Pierce and Riddle.

### B. Claims Against Defendant Banks

Defendants argue that Banks did not violate Plaintiff's Eighth Amendment rights because verbal harassment does not rise to the level of an Eighth Amendment violation.

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective "sufficiently culpable state of mind" requirement is met when a prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

The Ninth Circuit has "recognized that the 'desire to shield one's unclothed figure[] from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." Byrd v. Maricopa County Sheriff's Dept., 565 F.3d 1205, 1222 (9th Cir. 2009) (citing York v. Story, 324 F.2d 450, 455 (9th Cir. 1963)). The Ninth Circuit has also stated that "[w]hile we have not foreclosed the possibility that a cross-gender search could violate an incarcerated person's constitutional rights, we have noted that 'our prior case law suggests that prisoners' legitimate expectations of bodily privacy from persons of the opposite sex are extremely limited.'" Id. (quoting Jordan v. Gardner, 986 F.2d 1521, 1524 (1993)). In Jordan v. Gardner, 986 F.2d 1521 (9th Cir. 1993), the Ninth Circuit held that a prison policy that required male guards to conduct random, non-emergency, suspicion-less clothed body searches of female prisoners was cruel and unusual under the Eighth Amendment. Id. at 1522-23. The facts in Jordan involved male guards conducting clothed body searches of female prisoners that involved physical intrusive tactile searches of the crotch and breast area. Id. at 1523. The Court found that the searches were cruel and unusual because several inmates had long histories of sexual abuse by men, and one suffered severe distress during a search: prison officials had to pry her fingers loose from the bars she had grabbed during the search and she vomited after returning to her cell block. Id.

In its screening order, the Court found that Plaintiff's complaint stated a cognizable Eighth Amendment claim against Banks for removing Plaintiff from his cell, placing him in a holding cell, ordering him to strip naked, and verbally mocking him. Plaintiff's claim against Banks encompasses more than mere verbal harassment. Accordingly, Defendants' arguments regarding Eighth Amendment claims based on verbal harassment are not entirely on point. Even if verbal harassment by itself is insufficient to state a constitutional claim, see Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment or abuse is not sufficient to state a constitutional deprivation), Plaintiff has alleged more than mere verbal harassment. Defendants have not argued whether ordering an inmate to strip naked and then mocking the inmate is sufficient to support a claim under

///

7

the Eighth Amendment.[1]  The Court will recommend that Defendants' motion for summary judgment be denied with respect to Plaintiff's Eighth Amendment strip search claim against Defendant Banks.

### C. Medical Treatment Claims

Defendants argue that they are entitled to summary judgment with respect to Plaintiff's medical treatment claims.  "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  Estelle, 429 U.S. at 105.  In order to state an Eighth Amendment claim based on deficient medical treatment, a plaintiff must show: (1) a serious medical need; and (2) a deliberately indifferent response by the defendant.  Conn v. City of Reno, 572 F.3d 1047, 1055 (9th Cir. 2009) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).  A serious medical need is shown by alleging that the failure to treat the plaintiff's condition could result in further significant injury, or the unnecessary and wanton infliction of pain.  Id.  A deliberately indifferent response by the defendant is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference.  Id.  In order to constitute deliberate indifference, there must be an objective risk of harm and the defendant must have subjective awareness of that harm.  Id.

#### 1. Claims Against Silva, Swain, Banks, and Pierce for Confiscating Plaintiff's Medication

Plaintiff alleges that Defendants Silva, Swain, Banks, and Pierce confiscated Plaintiff's asthma and blood pressure medications.  However, there is no evidence in the record indicating to what risk, if any, Plaintiff was subjected when his medications were confiscated.  Plaintiff alleges that asthma is a serious medical condition.  However, even if the Court were to accept the assertion as true, it provides no indication as to the risks caused by the confiscation of his asthma medication for one day.

Defendants contend that Plaintiff did not suffer any serious harm from the confiscation and Plaintiff has failed to submit any evidence that rebuts Defendants' contention.  Plaintiff contends that

---

[1] While Plaintiff's claims can be distinguished from the facts in Jordan, Defendants have not raised this issue in their motion for summary judgment.

he "was substantially harmed from being without his medication" (Opp'n 7, ECF No. 83) but fails to identify any specific harm or support his contention with any evidence. Plaintiff alleges in his complaint that he suffered an asthma attack. However, there is no evidence that the confiscation of the asthma medication or blood pressure medication caused or exacerbated the asthma attack. Plaintiff does not allege that the asthma attack would have been prevented if his medication had not been confiscated and there is no indication that Plaintiff's opinion regarding the factors that caused his asthma attack would be admissible since Plaintiff is not a qualified medical expert. See Federal Rule of Evidence 701, 702. Notably, Plaintiff does not allege when he was scheduled to take his asthma medication or whether he missed a dose because Defendants confiscated the medication for one day.

Finally, Plaintiff contends that "his psych. evaluation records speak for themselves" and has attached the records as exhibits to his opposition. (Opp'n 7, ECF No. 83.) Plaintiff's argument that "his psych. evaluation records speak for themselves" is without merit, as the exhibits attached to his opposition are not properly authenticated, likely contain hearsay statements that will not be admissible at trial, and most significantly, state nothing about the risks caused by the confiscation of Plaintiff's medications. Accordingly, there is insufficient evidence that the alleged confiscation of Plaintiff's medications meets the objective "sufficiently serious" prong of an Eighth Amendment claim. In sum, there is no substantial evidence demonstrating to what risk, if any, Plaintiff was exposed because Defendants confiscated his medications. Accordingly, Defendants Silva, Swain, Banks, and Pierce are entitled to summary judgment with respect to Plaintiff's Eighth Amendment claims based on their confiscation of Plaintiff's medications.

### 2. Claims Against Defendant Silva for Failing to Summon Medical Staff

Plaintiff alleges that Defendant Silva acted with deliberate indifference by failing to summon medical staff for his swollen and numb hands. Plaintiff has submitted no evidence regarding any risks of further harm caused by Defendants' failure to summon medical staff for the swelling and numbness caused by the overly tight handcuffing. Plaintiff did not receive medical attention and there is no evidence that Plaintiff suffered substantial injury or could have suffered substantial injury. Accordingly, Defendant Silva is entitled to summary judgment with respect to Plaintiff's Eighth

Amendment claim based on his failure to summon medical staff for the swelling and numbness in his hands.

### 3. Claims Against Defendant Wimbly and Williams for Ignoring Plaintiff's Suicidal Feelings

Defendants contend that Wimbly and Williams are entitled to summary judgment because Plaintiff sustained no harm when Wimbly and Williams failed to summon medical staff after Plaintiff informed them that he was feeling suicidal. However, when the Court screened Plaintiff's complaint, the Court did not construe Plaintiff's complaint as raising any claims based on Wimbly and Williams' failure to summon medical staff after reporting that he was feeling suicidal.[2] (See Order Finding Service of First Am. Compl. Appropriate, and Forwarding Service Documents to Pl. for Completion and Return Within Thirty Days, ECF No. 39.)

Plaintiff alleges that "misconduct has been shown by staff not responding to Plaintiff Farha's complaint of feeling suicidal." (Opp'n 7, ECF No. 83.) Plaintiff also contends for the first time in his opposition that he "did in fact sustain mental and emotional harm from Wimbly and William[sic] failure to summon medical/psych assistance when he informed them that he felt suicidal!!!" (Opp'n 7-8, ECF No. 83.) Plaintiff does not identify any specific mental and emotional harm caused by Wimbly or Williams and any such harm was not mentioned in Plaintiff's complaint. Accordingly, there are no claims based on Wimbly's or Williams' failure to respond to Plaintiff's suicidal feelings raised in this lawsuit.

However, the Court construed Plaintiff's complaint as raising claims against Wimbly, Williams, and Riddle based on their deliberate indifference toward Plaintiff's alleged asthma attack. Plaintiff alleged that he suffered an asthma attack and instead of summoning medical help, Wimbly, Williams, and Riddle removed Plaintiff from his cell and assaulted him. Defendants have not raised

---

[2] Plaintiff's complaint did not explicitly raise an Eighth Amendment claim based on Wimbly's and Williams' failure to summon medical staff after Plaintiff reported his suicidal feelings. Further, no such claim could be liberally construed from Plaintiff's complaint. Plaintiff did not attempt to harm himself. More significantly, there is no suggestion that Plaintiff had the opportunity to harm himself. Plaintiff alleges that his cell had no blanket, mattress, shirts, or socks. Plaintiff alleges that much of the contents of his cell was confiscated. Plaintiff does not allege that he could have harmed himself and it is unclear how Plaintiff could have harmed himself. Accordingly, the allegations would not be sufficient to satisfy the objective prong of an Eighth Amendment violation.

10

any arguments in their motion for summary judgment regarding the alleged deliberate indifference toward Plaintiff's alleged asthma attack. Accordingly, Plaintiff will be permitted to proceed on his claims against Wimbly, Williams, and Riddle based on those facts.

### D.  Excessive Force Claims

Defendants argue that they are entitled to summary judgment with respect to Plaintiff's excessive force claims because Defendants used, at most, de minimis force that does not rise to the level of an Eighth Amendment violation. Where prison officials are accused of using excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-321 (1986)). Factors relevant to the analysis are the need for the application of force, the relationship between the need and the amount of force that was used and the extent of the injury inflicted. Whitley, 475 U.S. at 321. Other factors to be considered are the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. Id. The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." Id. at 319. Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 321-322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).

"The Eighth Amendment's prohibition of 'cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force." Hudson, 503 U.S. at 9-10. The relevant inquiry is not whether Plaintiff's injuries are de minimis, but whether the use of force was de minimis. See Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) ("Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts."). The degree of Plaintiff's injuries only serves as evidence of the degree of force used, it does not conclusively resolve the question of whether the degree of force was de minimis. See Wilkins, 130 S. Ct. at 1178 ("The

11

extent of injury may . . . provide some indication of the amount of force applied."). In other words, Defendant cannot escape liability for the use of force simply because Plaintiff was particularly resilient and failed to suffer any treatable injury. See Wilkins, 130 S. Ct. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury"); Hudson, 503 U.S. at 9 ("In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident.") (internal citations omitted).

### 1. Handcuffing Incident

In the Court's screening order, the Court did not construe Plaintiff's complaint as raising any claims based on overly tight handcuffing. However, to the extent that any such claims could be liberally construed from Plaintiff's complaint, Defendants correctly argue that the claims should be dismissed because the use of force was de minimis.

The Supreme Court has also suggested that even the de minimis use of force violates that Eighth Amendment when it is "of a sort 'repugnant to the conscience of mankind.'" Id. at 10 (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)) ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'") (emphasis added). Accordingly, the Court must determine whether Defendants maliciously and sadistically used force to cause harm and the amount of force used was more than de minimis. If the amount of force used was de minimis, the Court must ask whether the use of force was of a sort repugnant to the conscience of mankind.

Defendants argue that Plaintiff was not injured from the allegedly tight handcuffing. Plaintiff argues that "Defendants in this case specifically admitt[sic] to using physical force or 'de minimis force' whatever that is–the bottom line is that it is force–and all types of force is force indeed!!!" [3] (Opp'n 8, ECF No. 83.) Plaintiff alleges that he was injured when Defendant Banks handcuffed him

---

[3] The Court does not construe Plaintiff's statements as an admission that the use of force was de minimis, as it is clear that Plaintiff does not know what de minimis means.

12

too tightly and that he informed Defendant Silva that he needed to see medical staff.

There is no evidence that the handcuffing incident involved more than a de minimis use of force. Plaintiff's complaint does not describe the handcuffing in detail. Plaintiff alleges that he asked correctional officers to remove the handcuffs, but does not allege that he told any correctional officer that the handcuffs were too tight. Plaintiff does not identify who initially handcuffed him, nor is there any indication that Plaintiff complained about any tightness when the handcuffs were applied. The only allegation related to the injuries Plaintiff suffered from the handcuffs is Plaintiff's allegation that he requested to see a medical technical assistant to examine his hands because they were swollen. There is no indication that Plaintiff suffered any serious injuries or that Plaintiff could have suffered any serious injuries from the handcuffing. Although the extent of Plaintiff's injuries is not the central inquiry when determining whether the use of force was de minimis, there are no allegations or evidence that suggest the incident was anything other than a de minimis use of force. Further, the Court finds that the alleged use of force is not of a sort "repugnant to the conscience of mankind."

Accordingly, even if Plaintiff's complaint could be liberally construed as raising claims based on the handcuffing incident, such claims should be dismissed for failing to state a claim.

**2.   Assault Incident**

Defendants contend that they are entitled to summary judgment because they only "participated in the use of non-actionable, de minimis force" when they slammed Plaintiff into a wall, slapped his face, kicked his buttocks and choked him. (Mem. of P. & A. in Supp. of Defs.' Mot. for Summ. J. 6:27-7:3, ECF No. 79.) Defendants argue that the use of force was de minimis because "the incident only caused momentary pain, no bruising to Farha's buttocks and neck, and only a 'little redness' on his face that resolved within a couple of days." (P. & A. in Supp. of Mot. for Summ. J. 7:1-3, ECF No. 79.) The lack of identifiable injury is relevant for the purpose of determining whether the use of force was de minimis. However, Plaintiff's description of the use of force is also relevant evidence that the use of force was more than de minimis. Plaintiff alleged that he was slammed into a wall, kicked in the buttocks, and choked. Plaintiff also alleges that he sought medical treatment after he was slammed into a wall and attacked but "instead of getting

medical treatment–[Plaintiff] was beaten up instead." (Opp'n 9, ECF No. 83.) The evidence from both sides is sufficient to establish a genuine dispute regarding whether the use of force was de minimis. Accordingly, Defendants Wimbly, Williams, and Riddle are not entitled to summary judgment with respect to Plaintiff's excessive force claims.

### E. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because they did not violate Plaintiff's Eighth Amendment rights. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error 'is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Questions regarding qualified immunity should be resolved at the earliest possible stage in litigation because qualified immunity serves as an immunity from suit rather than a mere defense to liability. Id.

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving claims of qualified immunity. First, a court must decide whether the facts alleged by a plaintiff set forth a violation of a constitutional right. Saucier, 533 U.S. at 201. Second, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Id. If the defendant did not violate a clearly established constitutional right, the defendant is entitled to qualified immunity from plaintiff's claims. Pearson, 129 S. Ct. at 816 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). However, the Supreme Court has since held that the Saucier sequence is not mandatory in all cases and courts may resolve the "clearly established" question first when the Saucier sequence would result in a "substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." Id. at 818.

As discussed above, the Court finds that Plaintiff has submitted sufficient evidence to support his claims against Swain, Banks, and Pierce for placing Plaintiff in a holding cell, ordering him to

strip naked and ridiculing him; against Defendants Wimbly, Williams, and Riddle for using excessive force; and against Wimbly, Williams, and Riddle for exhibiting deliberate indifference toward Plaintiff's asthma attack. Accordingly, Defendants are not entitled to qualified immunity under the first prong of the qualified immunity analysis on these claims.

Defendants have not set forth any argument regarding whether any of the rights at issue were clearly established at the time of their alleged conduct. Accordingly, Defendants have failed to establish that they are entitled to qualified immunity under the second prong of the qualified immunity analysis. Defendants are not entitled to qualified immunity with respect to Plaintiff's claims.

## IV. Conclusion and Recommendation

The Court finds that Defendants Pierce and Riddle are not entitled to summary judgment based on their contention that they did not participate in the alleged constitutional violations because Plaintiff has set forth sufficient evidence rebutting their contention.

The Court finds that Defendant Banks is not entitled to summary judgment based on his contention that verbal harassment does not rise to the level of an Eighth Amendment violation because Plaintiff's claims are premised on more than mere verbal harassment.

The Court finds that Defendants Silva, Swain, Banks, and Pierce are entitled to summary judgment on Plaintiff's medical treatment claims because Plaintiff failed to set forth sufficient evidence in support of the conclusion that the confiscation of Plaintiff's medication caused a serious risk of significant injury.

The Court finds that Plaintiff's complaint did not raise any claims based on Wimbly and Williams' alleged deliberate indifference toward Plaintiff's suicidal feelings. Accordingly, the arguments raised in Defendants' motion regarding these claims will be disregarded. Defendants did not move for summary judgment with respect to Plaintiff's claims based on the allegations that Wimbly, Williams, and Riddle deliberately disregarded Plaintiff's asthma attack and Plaintiff will be allowed to proceed on those claims.

To the extent that Plaintiff's complaint can be liberally construed as raising claims for the alleged handcuffing incident, any such claims fail to state a claim.

The Court finds that Defendants Wimbly, Williams, and Riddle are not entitled to summary judgment on Plaintiff's excessive force claims because the alleged use of force was more than <u>de minimis</u>.

Finally, the Court finds that Defendants have failed to demonstrate that they are entitled to summary judgment based on the claims that are still viable in this action.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be PARTIALLY GRANTED AND PARTIALLY DENIED:
    a. Defendants' motion for summary judgment be DENIED with respect to Defendants' argument that Pierce and Riddle did not participate in any alleged violations of Plaintiff's rights;
    b. Defendants' motion for summary judgment be DENIED with respect to Defendants' argument that Banks' actions were non-actionable verbal harassment;
    c. Defendants' motion for summary judgment be GRANTED with respect to Plaintiff's medical treatment claims against Silva, Swain, Banks and Pierce;
    d. Defendants' motion for summary judgment be DENIED with respect to Plaintiff's excessive force claims against Wimbly, Williams, and Riddle;
    e. Defendants' motion for summary judgment be DENIED with respect to Defendants' argument that they are entitled to qualified immunity;
2. To the extent that Plaintiff's complaint raises excessive force claims based on the alleged handcuffing incident, such claims are DISMISSED for failing to state a claim; and
3. This action shall proceed on:
    a. Plaintiff's Eighth Amendment claims against Swain, Banks, and Pierce for placing Plaintiff in a holding cell, ordering him to strip naked, then ridiculing him;

///

      b.      Plaintiff's Eighth Amendment claims against Defendants Wimbly, Williams, and Riddle for using excessive force;

      c.      Plaintiff's Eighth Amendment claims against Wimbly, Williams, and Riddle for exhibiting deliberate indifference toward Plaintiff's asthma attack; and

      d.      Plaintiff's Fourteenth Amendment equal protection claims against Defendants Swain, Banks, Pierce, Wimbly, Williams, and Riddle.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   February 16, 2011**             /s/ Sheila K. Oberto
                                                                               UNITED STATES MAGISTRATE JUDGE